**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

(Greenbelt Division)

| | |
|---|---|
| **HERBERT TICE, on behalf of himself and others similarly situated,**<br>213 Sagun Drive<br>Fredericksburg, VA 22407<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CERNER CORPORATION D/B/A ORACLE HEALTH,**<br>2800 Rockcreek Pkwy<br>Kansas City, MO 64117<br><br>Serve on:<br>CSC-Lawyers Incorporating Service Company<br>7 St. Paul Street<br>Suite 820<br>Baltimore, MD 21202<br><br>**MEDSTAR ST. MARY'S HOSPITAL,**<br>25500 Point Lookout Road<br>Leonardtown, MD 20650-2015<br><br>Serve on:<br>Medstar St. Mary's Hospital<br>25500 Point Lookout Road<br>Leonardtown, MD 20650<br><br>**and**<br><br>**ST. MARY'S HOSPITAL OF ST. MARY'S COUNTY, INC.,**<br>25500 Point Lookout Road<br>Leonardtown, MD 20650<br><br>Serve on:<br>The Corporation Trust Incorporated<br>2405 York Road | **CIVIL ACTION**<br><br>**CASE NO.**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED**<br><br>***Electronically Filed*** |

Suite 201
Lutherville-Timonium, MD 21093-2264

**Defendants.**

## CLASS ACTION COMPLAINT

Herbert Tice, on behalf of himself and all similarly situated persons, alleges the following against Cerner Corporation d/b/a Oracle Health ("Oracle Health" or "Oracle"), MedStar St. Mary's Hospital and St. Mary's Hospital of St. Mary's County, Inc. (collectively, "MedStar", and together with Oracle, "Defendants"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff makes these allegations based upon personal knowledge of the facts pertaining to Plaintiff and on information and belief as to all other matters derived from, among other things, investigation by counsel and review of public documents.

## NATURE OF THE ACTION

1. This class action arises from Defendants' failure to protect highly sensitive data.

2. MedStar is a healthcare provider based in Maryland.[1]

3. Plaintiff Herbert Tice received care from Medstar St. Mary's Hospital before the Data Breach.

4. According to the letter notifying Plaintiff of the Data Breach, on March 15, 2025, "Oracle Health, an electronic health records vendor used by MedStar St. Mary's" informed "MedStar St. Mary's Hospital that it experienced a cybersecurity event involving unauthorized access to MedStar St. Mary's patient information contained on Oracle Health's systems."

5. The letter also noted "[s]pecifically, Oracle Health explained that it discovered an

---

[1] MEDSTAR ST. MARY'S HOSPITAL, https://www.medstarhealth.org/locations/medstar-st-marys-hospital (last visited Nov. 25, 2025).

unauthorized party gained access to certain Oracle Health data migration systems sometime after January 22, 2025."

6. "On June 6, 2025, MedStar St. Mary's received from Oracle Health a list of patients whose information was included in the files involved in the incident."

7. "The patient information accessed may have included one or more of the following: patient name, Social Security numbers, driver's license numbers, dates of birth, treating physician, dates of service, medication information, insurance information and treatment and/or diagnostic information."

8. As such, Defendants store a litany of highly sensitive personally identifiable information ("PII") and protected health information ("PHI")—together "personal information"—about their current and former patients. But Defendants lost control over that data when cybercriminals infiltrated their insufficiently protected computer systems in the Data Breach.

9. The types of personal information exposed include "patient name, Social Security numbers, driver's license numbers, dates of birth, treating physician, dates of service, medication information, insurance information and treatment and/or diagnostic information."

10. It is unknown for precisely how long the cybercriminals had access to Defendants' network before the breach was discovered. In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of their systems—thereby allowing cybercriminals unrestricted access to current and former patients' personal information.

11. On information and belief, cybercriminals were able to breach Defendants' systems because Defendants failed to adequately train their employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's personal information. In short, Defendants' failures placed the Class's personal information in a vulnerable position—rendering

them easy targets for cybercriminals.

12. Plaintiff is a Data Breach victim. He brings this class action on behalf of himself, and all others harmed by Defendants' misconduct.

13. The exposure of one's personal information to cybercriminals is a bell that cannot be unrung. Before this Data Breach, Defendants' current and former patients' private information was exactly that—private. Now their private information is forever exposed and unsecured.

**PARTIES**

14. Plaintiff Herbert Tice is a natural person and a citizen of Virginia. He is domiciled in Virginia.

15. Defendant Cerner Corporation d/b/a Oracle Health Inc., is a Delaware corporation with its principal place of business located at 8779 Hillcrest Road, Kansas City, MO 64138.[2]

16. Defendant MedStar St. Mary's Hospital, owned by St. Mary's Hospital of St. Mary's County, is located at 25500 Point Lookout Road, Leonardtown, MD 20650.

17. Defendant St. Mary's Hospital of St. Mary's County, Inc. is located at 25500 Point Lookout Road, Leonardtown, MD 20650.

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Cerner Corporation d/b/a Oracle Health ("Oracle Health") are citizens of different states. And there are over 100 putative class members.

19. This Court has personal jurisdiction over Defendants because MedStar St. Mary's

---

[2] *Oracle Acquires Cerner to Form Oracle Health; The Future of Healthcare*, ORACLE, https://www.oracle.com/health/acquisition-of-cerner-the-future-of-healthcare/ (last visited Nov. 6, 2025).

Hospital ("MedStar") regularly conducts business in Maryland, both Defendants regularly conduct business in Maryland, and have sufficient minimum contacts in Maryland.

20. Venue is proper in this Court because MedStar is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

**BACKGROUND**

***Defendants Collected and Stored the personal information of Plaintiff and the Class***

21. MedStar is a healthcare provider based in Maryland.

22. MedStar uses Oracle Health (previously Cerner Corporation) which is a third-party electronic health records vendor used by many healthcare providers.

23. As part of their business, Defendants receive and maintain the personal information of thousands of their current and former patients.

24. In collecting and maintaining the personal information, Defendants agreed they would safeguard the data in accordance with their internal policies, state law, and federal law.

25. Under state and federal law, businesses like Defendants have duties to protect their current and former patients' personal information and to notify them about breaches.

***Defendants' Data Breach***

26. According to the letter notifying Plaintiff of the Data Breach, on March 15, 2025, Oracle Health informed MedStar that it experienced a cybersecurity event involving unauthorized access to MedStar's patient information contained on Oracle Health's systems.

27. On June 6, 2025, Oracle Health provided MedStar with a "list of patients whose information was included in the files involved in the incident."

28. The types of personal information exposed included "patient name, Social Security

numbers, driver's license numbers, dates of birth, treating physician, dates of service, medication information, insurance information and treatment and/or diagnostic information."

29. Currently, the precise number of persons injured is unclear. But the size of the putative class can be ascertained from information in Defendants' custody and control. And upon information and belief, the putative class is over one hundred members—as it includes MedStar's current and former patients.

30. And yet, Defendants waited until August 1, 2025, before it began notifying the class. Thus, Defendants kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

31. When Defendants did notify Plaintiff and the Class of the Data Breach, Defendants acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiff and the Class: "We remind you it is always advisable to be vigilant for incidents of fraud or identity theft by reviewing your account statements and free credit reports for any unauthorized activity."

32. Defendants failed in their duties when their inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the personal information. And thus, Defendants caused widespread injury and monetary damages.

33. Defendants have done little to remedy their Data Breach. True, Defendants have offered some victims credit monitoring and identity related services. But such services are wholly insufficient to compensate Plaintiff and class members for the injuries that Defendants inflicted upon them, including their present and ongoing risk of identity theft and fraud arising from the Data Breach.

34. Because of Defendants' Data Breach, the sensitive personal information of Plaintiff and class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and class members.

35. Plaintiff Herbert Tice was a patient of MedStar. As a result, Defendants obtained and maintained Plaintiff's personal information.

36. As a result, Plaintiff was injured by Defendants' Data Breach.

***Plaintiff Herbert Tice, on behalf of the Oracle Health Nationwide Class and the MedStar Healthcare Provider Nationwide Subclass***

37. Plaintiff Herbert Tice received care from MedStar, one of Oracle's healthcare provider clients, and received treatment from MedStar prior to the Data Breach. As a condition of receiving medical services, Plaintiff was required to provide his personal information to Defendants, including but not limited to his name, Social Security number and medical information, in connection with Oracle's services contracted by his healthcare provider.

38. Plaintiff typically takes measures to protect his personal information and is very careful about sharing his personal information. Plaintiff has never knowingly transmitted unsecured personal information over the internet or other unsecured source. He stores any documents containing his personal information in a safe and secure location, and he chooses unique usernames for his passwords and online accounts.

39. In entrusting his personal information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his personal information, including only contracting with third party vendors who would adequately protect his personal information.

40. Had Plaintiff known that Defendants did not utilize reasonable data security measures, he would not have entrusted his personal information to Defendants.

41. At the time of the Data Breach, Oracle retained Plaintiff's personal information on its network with inadequate data security and in unencrypted form, causing Plaintiff's personal information to be accessed and exfiltrated by cybercriminals in the Data Breach.

42. Plaintiff received a Data Breach Notice on or around August 1, 2025, notifying him that his personal information was improperly accessed by unauthorized third parties, including his name, Social Security Number, and information included within patient medical records, such as medical record numbers, doctors, treatment, medication, and diagnostic information.

43. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the personal information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

44. Plaintiff has been and will be forced to expend considerable time and effort including to monitor his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his personal information, disclosed as a result of the Data Breach.

45. Indeed, Plaintiff's personal information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam texts and phone calls using his personal information that he has received since the Data Breach.

46. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his personal information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

47. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his personal information in the Data Breach. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his personal information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

48. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his personal information compromised in the Data Breach includes sensitive data that cannot be changed.

49. Furthermore, Plaintiff's sensitive personal information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Consumers Prioritize Data Security***

50. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[3] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't

---

[3] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited Nov. 6, 2025).

trust with their data."[4]

b. 89% of consumers stated that "I care about data privacy."[5]

c. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[6]

d. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[7]

e. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[8]

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

51. Because of Defendants' failure to prevent the Data Breach, Plaintiff and class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. loss of loss of the opportunity to control how their personal information is used;

b. diminution in value of their personal information;

c. compromise and continuing publication of their personal information;

d. out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

---

[4] *Id.* at 3.
[5] *Id.* at 9.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 11.

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen personal information; and

h. continued risk to their personal information—which remains in Defendants' possession—and is thus as risk for futures breaches so long as Defendants fails to take appropriate measures to protect the personal information.

52. Stolen personal information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen personal information can be worth up thousands depending on the type of information obtained.[9]

53. The value of Plaintiff and Class's personal information on the black market is considerable. Stolen personal information trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

54. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the personal information far and wide.

55. One way that criminals profit from stolen personal information is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and

---

[9] Ben Luthi, *Here's What Your Data Sells for on the Dark Web*, EXPERIAN, June 30, 2025, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/#:~:text=Quick%20Answer,Price%20Index%20by%20Privacy%20Affairs.

combining two sources of data— first the stolen personal information, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

56. The development of "Fullz" packages means that the personal information exposed in the Data Breach can easily be linked to data of Plaintiffs and the Class that is available on the internet.

57. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the personal information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other class members' stolen personal information is being misused, and that such misuse is fairly traceable to the Data Breach.

58. Defendants disclosed the personal information of Plaintiff and class members for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the personal information of Plaintiff and class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen personal information.

59. Defendants' failure to promptly and properly notify Plaintiff and class members of the Data Breach exacerbated Plaintiff and class members' injury by depriving them of the earliest ability to take appropriate measures to protect their personal information and take other necessary steps to mitigate the harm caused by the Data Breach.

60. Defendants' data security obligations were particularly important given the

substantial increase in cyberattacks and/or data breaches in recent years.

61. In 2024, a record 3,158 data breaches occurred—exposing approximately 1,350,835,988 sensitive records (i.e., 211% increase year over year).[10]

62. Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[11]

63. In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations have experienced cyberattacks.[12]

64. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendant.

65. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendants—should use to protect against unlawful data exposure.

66. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices

---

[10] *2024 data breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf (last visited Nov. 6, 2025)

[11] Ben Kochman, *FBI*, *Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[12] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack.

businesses must use.[13] The FTC declared that, *inter alia*, businesses must:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

67. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

68. Furthermore, the FTC explains that companies must:

a. not maintain information longer than is needed to authorize a transaction;

b. limit access to sensitive data;

c. require complex passwords to be used on networks;

d. use industry-tested methods for security;

e. monitor for suspicious activity on the network; and

f. verify that third-party service providers use reasonable security measures.

69. The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[13] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf

70. In short, Defendants' failure to use reasonable and appropriate measures to protect against unauthorized access to their current and former patients' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Failed to Follow Industry Standards***

71. Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

72. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

73. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-02) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

74. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby

causing the Data Breach.

***Defendants Violated HIPAA***

75. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly transactions and code sets to maintain the privacy and security of protected health information.[14]

76. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of personal information and PHI is properly maintained.[15]

77. The Data Breach itself resulted from a combination of inadequacies showing Defendants failed to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

a. failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding

[14] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.
[15] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. failing to ensure compliance with HIPAA security standards by Defendants' workforce in violation of 45 C.F.R. § 164.306(a)(4);

e. failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

78. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

79. Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rule of Civil Procedure.

80. The classes that Plaintiff seeks to represent are defined as follows:

> **Oracle Health Nationwide Class:**
> All individuals residing in the United States whose personal information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.
>
> **MedStar Healthcare Provider Nationwide Subclass:**
> All individuals residing in the United States whose personal information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by MedStar, including all those individuals who receive notice of the Data Breach.

81. Excluded from the Classes are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any Defendants' officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

82. Plaintiff reserves the right to amend the class definition.

83. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

84. Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendants' custody and control. After all, Defendants already identified some individuals and sent them Data Breach notices.

85. Numerosity. The class members are so numerous that joinder of all class members is impracticable. Upon information and belief, the proposed Class includes at least 100 members.

86. Typicality. Plaintiff's claims are typical of class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

87. Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

88. Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual class members—for which a class wide proceeding can answer for all class members. In fact, a class wide proceeding is necessary to answer the following questions:

a. if Defendants had a duty to use reasonable care in safeguarding Plaintiff's and the Class's personal information;

b. if Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendants were negligent in maintaining, protecting, and securing personal information;

d. if Defendants breached contract promises to safeguard Plaintiff and the Class's personal information;

e. if Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

f. if Defendants' Breach Notice was reasonable;

g. if the Data Breach caused Plaintiff and the Class injuries;

h. what the proper damages measure is; and

i. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

89. Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members are relatively small compared to the burden and expense that individual litigation against Defendants would require. Thus, it would be practically impossible for class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Classes)**

90. Plaintiff restates the allegations in Paragraphs 1 through 89 above, as if fully set forth herein.

91. Plaintiff and the Class (or their third-party agents) entrusted their personal information to Defendants on the premise and with the understanding that Defendants would safeguard their personal information, use their personal information for business purposes only, and/or not disclose their personal information to unauthorized third parties.

92. Defendants owed a duty of care to Plaintiff and class members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their personal information in a Data Breach. And here, that foreseeable danger came to pass.

93. Defendants have full knowledge of the sensitivity of the personal information and the types of harm that Plaintiff and the Class could and would suffer if their personal information was wrongfully disclosed.

94. Defendants owed these duties to Plaintiff and class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security practices. After all, Defendants actively sought and obtained Plaintiff and class members' personal information.

95. Defendants also had a duty to exercise appropriate clearinghouse practices to remove personal information it was no longer required to retain under applicable regulations.

96. Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the personal information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

97. Defendants also had a duty to exercise appropriate clearinghouse practices to remove personal information it was no longer required to retain under applicable regulations.

98. Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the personal information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through

the criminal acts of a third party.

99. Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class (or their third-party agents) entrusted Defendants with their confidential personal information, a necessary part of obtaining services from Defendant.

100. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff and class members' personal information.

101. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the personal information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff and the class members' sensitive personal information.

102. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect personal information and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of personal information Defendants had collected and stored and the foreseeable consequences of a Data Breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

103. Similarly, under HIPAA, Defendants had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and class members' PHI.

104. Defendants violated their duties under HIPAA by failing to use reasonable

measures to protect PHI and by not complying with applicable regulations detailed supra. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of PHI that Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

105. The risk that unauthorized persons would attempt to gain access to the personal information and misuse it was foreseeable. Given that Defendants hold vast amounts of personal information, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the personal information —whether by malware or otherwise.

106. Personal information is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the personal information of Plaintiffs and class members' and the importance of exercising reasonable care in handling it.

107. Defendants improperly and inadequately safeguarded the personal information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

108. Defendants breached these duties as evidenced by the Data Breach.

109. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and class members' personal information by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the personal information was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

110. Defendants breached their duties by failing to exercise reasonable care in

supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and personal information of Plaintiff and class members which actually and proximately caused the Data Breach and Plaintiff and class members' injury.

111. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and class members' injuries-in-fact.

112. Defendants have admitted that the personal information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

113. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

114. Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their personal information by criminals, improper disclosure of their personal information, lost benefit of their bargain, lost value of their personal information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Classes)**

115. Plaintiff restates the allegations in Paragraphs 1 through 89 above, as if fully set forth herein.

116. Plaintiff and class members either directly contracted with Defendants or Plaintiff and class members were the third-party beneficiaries of contracts with Defendant.

117. Plaintiff and class members (or their third-party agents) were required to provide their personal information to Defendants as a condition of receiving services provided by Defendant. Plaintiff and class members (or their third-party agents) provided their personal information to Defendants or their third-party agents in exchange for Defendants' services.

118. Plaintiff and class members (or their third-party agents) reasonably understood that a portion of the funds they paid would be used to pay for adequate cybersecurity measures.

119. Plaintiff and class members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the personal information that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

120. Plaintiff and the class members (or their third-party agents) accepted Defendants' offers by disclosing their personal information to Defendants or their third-party agents in exchange for services.

121. In turn, and through internal policies, Defendants agreed to protect and not disclose the personal information to unauthorized persons.

122. Implicit in the parties' agreement was that Defendants would provide Plaintiff and class members (or their third-party agents) with prompt and adequate notice of all unauthorized

access and/or theft of their personal information.

123. After all, Plaintiff and class members (or their third-party agents) would not have entrusted their personal information to Defendants (or their third-party agents) in the absence of such an agreement with Defendant.

124. Plaintiff and the Class (or their third-party agents) fully performed their obligations under the implied contracts with Defendant.

125. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

126. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

127. Defendants materially breached the contracts it entered with Plaintiff and class members (or their third-party agents) by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into their computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic personal information that Defendants created, received, maintained, and transmitted.

128. In these and other ways, Defendants violated their duty of good faith and fair dealing.

129. Defendants' material breaches were the direct and proximate cause of Plaintiff's and class members' injuries (as detailed supra).

130. Plaintiff and class members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendants' conduct.

## THIRD CAUSE OF ACTION
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Classes)**

131. Plaintiff restates the allegations in Paragraphs 1 through 89 above, as if fully set forth herein.

132. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential personal information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

133. Defendants owed a duty to their current and former patients, including Plaintiff and the Class, to keep this information confidential.

134. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and class members' personal information is highly offensive to a reasonable person.

135. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were

reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

136. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

137. Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

138. Defendants acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

139. Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

140. As a proximate result of Defendants' acts and omissions, the private and sensitive personal information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed supra).

141. Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their personal information are still maintained by Defendants with their inadequate cybersecurity system and policies.

142. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the personal information of

Plaintiff and the Class.

143. In addition to injunctive relief, Plaintiff, on behalf of himself and the other class members, also seeks compensatory damages for Defendants' invasion of privacy, which includes

144. The value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

145. Plaintiff restates the allegations in Paragraphs 1 through 89 above, as if fully set forth herein.

146. This claim is pleaded in the alternative to the breach of implied contract claim.

147. Plaintiff and class members (or their third-party agents) conferred a benefit upon Defendant. After all, Defendants benefitted from (1) using their personal information to provide service, and (2) accepting payment.

148. Defendants appreciated or had knowledge of the benefits it received from Plaintiff and class members.

149. Plaintiff and class members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the personal information that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

150. Defendants enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and class members' personal information.

151. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendants instead calculated to avoid their data security

obligations at the expense of Plaintiff and class members by utilizing cheaper, ineffective security measures. Plaintiff and class members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

152. Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's and class members' (1) personal information and (2) payment because Defendants failed to adequately protect their personal information.

153. Plaintiff and class members have no adequate remedy at law.

154. Defendants should be compelled to disgorge into a common fund—for the benefit of Plaintiff and class members—all unlawful or inequitable proceeds that it received because of their misconduct.

**FIFTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Classes)**

155. Plaintiff restates the allegations in Paragraphs 1 through 89 above, as if fully set forth herein.

156. Given the relationship between Defendants and Plaintiff and class members, where Defendants became guardian of Plaintiff's and class members' personal information, Defendants became a fiduciary by their undertaking and guardianship of the personal information, to act primarily for Plaintiff and class members, (1) for the safeguarding of Plaintiff and class members' personal information; (2) to timely notify Plaintiff and class members of the Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and do store.

157. Defendants have a fiduciary duty to act for the benefit of Plaintiff and class members upon matters within the scope of Defendants' relationship with them—especially to

secure their personal information.

158. Because of the highly sensitive nature of the personal information, Plaintiff and class members (or their third-party agents) would not have entrusted Defendant, or anyone in Defendants' position, to retain their personal information had they known the reality of Defendants' inadequate data security practices.

159. Defendants breached their fiduciary duties to Plaintiff and class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and class members' personal information.

160. Defendants also breached their fiduciary duties to Plaintiff and class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

161. As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and class members have suffered and will continue to suffer numerous injuries (as detailed supra).

**SIXTH CAUSE OF ACTION**
**Maryland Personal Information Protection Act, Md. Code Ann., Com. Law §§ 14-3501 *et seq.***
**(On Behalf of Plaintiff and the Classes)**

162. Plaintiff restates the allegations in Paragraphs 1 through 89 above, as if fully set forth herein.

163. Under Md. Code Ann., Com. Law § 14-3503(a), "[t]o protect personal information from unauthorized access, use, modification, or disclosure, a business that owns or licenses personal information of an individual residing in the State shall implement and maintain reasonable security procedures and practices that are appropriate to the nature of personal information owned or licensed and the nature and size of the business and its operations."

164. Defendants are businesses that own or license computerized data that includes

personal information as defined by Md. Code Ann., Com. Law §§ 14-3501(b)(1) and (2).

165. Plaintiff and class members include "individuals" and "customers" as defined and covered by Md. Code Ann., Com. Law §§ 14-3502(a) and 14-3503.

166. Plaintiff's and class members' personal information includes health information as covered under Md. Code Ann., Com. Law § 14-3501(d).

167. Plaintiff's and class members' personal information includes personal information as covered under Md. Code Ann., Com. Law § 14-3501(e).

168. Defendants did not maintain reasonable security procedures and practices appropriate to the nature of the personal information owned or licensed and the nature and size of its business and operations in violation of Md. Code Ann., Com. Law § 14-3503.

169. The Data Breach was a "[b]reach of the security of a system" as defined by Md. Code Ann., Com. Law § 14-3504(a)(1).

170. Under Md. Code Ann., Com. Law § 14-3504(b)(1), "[a] business that owns, licenses, or maintains computerized data that includes personal information of an individual residing in the State, when it discovers or is notified that it incurred a breach of the security of a system, shall conduct in good faith a reasonable and prompt investigation to determine the likelihood that personal information of the individual has been or will be misused as a result of the breach."

171. Under Md. Code Ann., Com. Law §§ 14-3504(b)(2) and 14-3504(c)(2), if after an investigation is concluded, the business determines that misuse of the individual's personal information has occurred or is reasonably likely to occur as a result of a breach of the security system, the business shall notify the individual of the breach and that notification "shall be given as soon as reasonably practical" after the business discovers or is notified of the breach of a security

system.

172. Because Defendants discovered a security breach and had notice of a security breach, Defendants had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Md. Code Ann., Com. Law §§ 14-3504(b)(2) and 14-3504(c)(2).

173. By failing to disclose the Data Breach in a timely and accurate manner, Defendants violated Md. Code Ann., Com. Law §§ 14-3504(b)(2) and 14-3504(c)(2).

174. As a direct and proximate result of Defendants' violations of Md. Code Ann., Com. Law §§ 14-3504(b)(2) and 14-3504(c)(2), Plaintiff and class members suffered damages, as described above.

175. Pursuant to Md. Code Ann., Com. Law § 14-3508, Defendants' violations of Md. Code Ann., Com. Law §§ 14-3504(b)(2) and 14-3504(c)(2) are unfair or deceptive trade practices within the meaning of the Maryland Consumer Protection Act, 13 Md. Code Ann., Com. Law §§ 13-101 *et seq*. and subject to the enforcement and penalty provisions contained within the Maryland Consumer Protection Act.

176. Plaintiff and class members seek relief under Md. Code Ann., Com. Law §13-408, including actual damages and attorney's fees.

**<u>SEVENTH CAUSE OF ACTION</u>**
**Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-301 *et seq.***
**(On Behalf of Plaintiff and the Classes)**

177. Plaintiff restates the allegations in Paragraphs 1 through 89 above, as if fully set forth herein.

178. Defendants are persons as defined by Md. Code Ann., Com. Law § 13-101(h).

179. Defendants' conduct as alleged herein related to "sales" as defined by Md. Code Ann., Com. Law § 13-101(i) and § 13-303.

180. Nationwide Class members are “consumers” as defined by Md. Code Ann., Com. Law § 13-101(c).

181. Defendants advertise, offers, or sell “consumer goods” or “consumer services” as defined by Md. Code Ann., Com. Law § 13-101(d).

182. Defendants advertised, offered, or sold goods or services in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

183. Defendants engaged in unfair and deceptive trade practices, in violation of Md. Code Ann., Com. Law § 13-301, including:

a. False or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers;

b. Representing that consumer goods or services have a characteristic that they do not have;

c. Representing that consumer goods or services are of a particular standard, quality, or grade that they are not;

d. Failing to state a material fact where the failure deceives or tends to deceive;

e. Advertising or offering consumer goods or services without intent to sell, lease, or rent them as advertised or offered;

f. Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement, sale lease or rental.

184. Defendants engaged in these unfair and deceptive trade practices in connection with offering for sale or selling consumer goods or services in violation of Md. Code, Com Law § 13-303, including:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and class members' personal information, which was a direct and proximate cause of the Data Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and class members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Maryland Personal Information Protection Act, Md. Code Ann., Com. Law § 14-3503, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and class members' personal information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and class members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Maryland Personal Information Protection Act, Md. Code Ann., Com. Law § 14-3503;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and class members' personal information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and class members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Maryland Personal Information Protection Act, Md. Code Ann., Com. Law § 14-3503.

185. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' personal information. Defendants' misrepresentations and omissions would have been important to a significant number of consumers in making financial decisions.

186. Defendants intended to mislead Plaintiff and class members and induce them to rely on its misrepresentations and omissions.

187. Had Defendants disclosed to Plaintiff and class members that its data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendants received, maintained, and compiled Plaintiff's and class members' personal information as part of the services Defendants provided and for which Plaintiff and class members paid without advising Plaintiffs and class members that Defendants' data security practices were insufficient to maintain the safety and confidentiality of Plaintiff's and class members' personal information. Accordingly, Plaintiff and the class members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

188. Defendants' acted intentionally, knowingly, and maliciously to violate Maryland's Consumer Protection Act, and recklessly disregarded Plaintiff and class members' rights. Defendants' past data breaches and breaches within the healthcare industry put it on notice that its security and privacy protections were inadequate.

189. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with Defendants' as they would not have paid Defendants' for goods and services or would have paid less for such goods and services but for Defendants' violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; time and money spent cancelling and replacing passports; loss of value of their personal information; and an increased, imminent risk of fraud and identity theft.

190. Plaintiff and class members seek all monetary and non-monetary relief allowed by law, including damages, restitution, disgorgement, injunctive relief, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

Plaintiff and class members respectfully request judgment against Defendants and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendants from further unfair and/or deceptive practices;

E. Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting other relief that this Court finds appropriate.

Dated: November 26, 2025

Respectfully submitted,

**MURPHY, FALCON & MURPHY**

/s/ *Nikoletta S. Mendrinos*
Nikoletta S. Mendrinos (Bar # 18961)
One South Street, 30th Floor
Baltimore, Maryland 21202
Telephone: (410) 951-8744
Facsimile: (410) 539-6599
nikoletta.mendrinos@murphyfalcon.com

**STUEVE SIEGEL HANSON LLP**
*/s/ Barret J. Vahle*
Barrett J. Vahle, Mo. Bar No. 56674
*pro hac vice* forthcoming
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
vahle@stuevesiegel.com
*Attorneys for Plaintiff*

**JURY TRIAL DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial as to all claims so triable.

Dated: November 26, 2025

Respectfully submitted,

**MURPHY, FALCON & MURPHY**

/s/ *Nikoletta S. Mendrinos*
Nikoletta S. Mendrinos (Bar # 18961)
One South Street, 30th Floor
Baltimore, Maryland 21202
Telephone: (410) 951-8744
Facsimile: (410) 539-6599
nikoletta.mendrinos@murphyfalcon.com

**STUEVE SIEGEL HANSON LLP**
*/s/ Barrett J. Vahle*
Barrett J. Vahle, Mo. Bar No. 56674
*pro hac vice* forthcoming
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
vahle@stuevesiegel.com
*Attorneys for Plaintiff*